IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

BART WAYNE WOODARD                                                                         PLAINTIFF

v.                                         Civil No. 6:18-CV-06013

CORRECTIONAL OFFICER MCGEE and                                                        DEFENDANTS
INMATE TODD RANDALL GREENWAY

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This is a civil rights action provisionally filed pursuant to 42 U.S.C. § 1983. Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3) (2011), the Honorable Susan O. Hickey, Chief United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation.

Currently before the Court is Defendant McGee's Motion to Reconsider the Issue of Exhaustion. (ECF No. 42).

### I. BACKGROUND

Plaintiff filed his Complaint on January 31, 2018. (ECF No. 1). He alleges his constitutional rights were violated when he was sexually assaulted and beaten in his cell while incarcerated in the Arkansas Department of Correction ("ADC") - Ouachita River Unit. (*Id*. at 8-25). Plaintiff alleges this occurred from July 18, 2016 to July 19, 2016. (*Id*. at 8, 10, 12). Plaintiff alleges Defendant McGee opened Plaintiff's cell door and let Inmate Greenway and the John Doe inmates into his cell to commit these acts. (*Id*. at 8). While the assault was ongoing, Plaintiff alleges that Defendant McGee and Inmate Greenway urged the other inmates on in their activities and gave verbal instructions to them. (*Id*. at 10, 12). During the assault, Defendant McGee used what appeared to be a smartphone to take photos or video of the assault as it occurred. (*Id*. at 9).

1

Plaintiff alleges the John Doe Correctional Offices 1-3 and John Doe Assistant Warden refused to provide him with medical care after the incident from July 18, 2016 to July 25, 2016, accused him of lying and of inflicting the injuries upon himself, and threatened him. (*Id*. at 17-22). Plaintiff indicates he did not file an ADC grievance but did file a Prison Rape Elimination Act ("PREA") Report. (*Id*. at 3). The Doe Defendants in this case were dismissed on May 10, 2019. (ECF No. 41).

Defendant McGee filed his Summary Judgment Motion on June 15, 2018, arguing that Plaintiff filed no grievances against him pursuant to ADC Administrative Directive ("AD") 14-16 concerning the alleged incident and, therefore, Plaintiff failed to his exhaust his administrative remedies as required by the PLRA. (ECF No. 15-2 at 3; ECF No. 16). Defendant McGee further argued, sans legal support, that the ADC grievance policy (AD 14-16) is a "completely separate" procedure from the ADC's Prison Rape Elimination Act (PREA) Policy, therefore "a PREA complaint does not trigger the grievance process." (ECF No. 16 at 4). Defendant McGee did not attach a copy of the PREA Report as an exhibit to the Motion.

Plaintiff filed his Response to the Summary Judgment Motion on July 11, 2018. (ECF No. 19). Plaintiff did not dispute his failure to file any grievances concerning any of the claims in his Complaint. (ECF No. 1 at 3). Instead, Plaintiff argues the ADC AD 15-29 PREA Policy is controlling in this case. (ECF No. 20 at 7-10; ECF No. 21 at 2). He argues that, under the PREA policy, an inmate has the choice of using either the ADC grievance procedure (AD 14-16) or the PREA procedure (AD 15-29) to report sexual abuse and, therefore, completion of either procedure will satisfy the PLRA exhaustion requirement. (ECF No. 21 at 2-3). Plaintiff chose to file a PREA Report. In his Summary Judgment Response, Plaintiff also alleges, for the first time in the case, that correctional officers denied him access to grievance and complaint forms. (ECF No. 20 at 5). Specifically, Plaintiff alleges "[a]ll correctional officers refused access to all forms of official type

paper forms for making request or filing complaints & or grievances." (*Id*.). Plaintiff did not attach a copy of his PREA Report to his Response.

On September 24, 2018, the undersigned filed a Report and Recommendation finding, as a case of first impression in this Circuit, that the PREA process could not act as a substitute for the ADC grievance process. The undersigned further found that Plaintiff was not prevented from utilizing the grievance process. (ECF No. 25). It was recommended that Defendant McGee's Motion for Summary Judgment be granted, and Plaintiff's Complaint be dismissed with prejudice as to all Defendants. (*Id*. at 8).

Plaintiff filed his Objection to the Report and Recommendation on November 11, 2018. (ECF No. 29). In his Objection, Plaintiff admitted "he did not file any grievances." (*Id*. at 3). He alleges he requested "complaint forms, request forms, grievances, and also requested the phone." In a declaration attached to his objection, he states "[a]ll ADC staff members refused or failed to provide this Plaintiff with any and all official forms for making request, filing complaints, or grievances." (ECF No. 29-2 at 1). Plaintiff also states he requested unit level grievance forms on at least six different occasions from at least six different ADC employees and "at no time while I was in East Isolation did I receive any grievance forms, or any inmate request forms . . ." (*Id*. at 1-2). Plaintiff alleges he was not able to access any grievance forms until he was released from East Isolation, which occurred "a minimum of 30 day[s] after the attack." (ECF No. 29 at 6). Plaintiff did not attach a copy of his PREA Report to his Objection.

Defendant McGee filed a Response to Plaintiff's Objection on November 30, 2018. (ECF No. 30). He argues Plaintiff had access to the grievance process while in East Isolation but failed to use it. He notes that McGee was the only named Defendant working in that area; there were non-party officers available; and, during the two-week period in question, 56 grievances were filed by other inmates in East Isolation, showing that grievance forms were available. (*Id*. at 2-3). McGee further

3

notes that, even if Plaintiff were denied forms while in East Isolation, he could have filed a grievance and documented the refusal to provide forms when he was released from Isolation and did not do so. (*Id*. at 3). McGee also addressed Plaintiff's PREA Report and noted that, even if a PREA Report could substitute for the formal ADC grievance process, Plaintiff's PREA Report in this case could not do so because Plaintiff's PREA Report contains a completely different set of facts than his allegations for this case, and Defendant McGee is not mentioned anywhere in his PREA complaint. (*Id*. at 5). Defendant McGee attached a copy of the PREA Report and the PREA investigation documents to his Response.[1] (ECF No. 30-3).

On February 1, 2019, the Honorable Susan O. Hickey declined to adopt the Report and Recommendation because Plaintiff asserted that he was prevented from using the ADC grievance process in both his Response to the Summary Judgment and his Objection to the Report and Recommendation. (ECF No. 31). Judge Hickey notes that the objection was provided on a handwritten, signed, and sworn declaration. She further notes that Plaintiff's Response to the Summary Judgment Motion was dated, signed, and sworn under penalty of perjury. (*Id*. at 3). Due to these sworn assertions, Judge Hickey found that a genuine issue of material fact existed as to "whether Plaintiff was kept from utilizing the ADC grievance procedure, and accordingly, whether he had any available administrative remedies."[2] (*Id*. at 4).

On May 17, 2019, Defendant McGee filed his Motion to Reconsider Exhaustion, citing recently discovered evidence in the case. (ECF No. 42). A copy of Plaintiff's PREA Report was attached to the Motion. (ECF No. 42-3).

---

[1] A copy of this PREA Report and documentation should have been provided with the first Motion for Summary Judgment.
[2] The Order did not address Plaintiff's argument that a PREA report could be substituted for the formal ADC grievance process, or the Report and Recommendation's finding that it could not act as a substitute for a formal grievance.

## II. LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id*. (citing *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "Conclusory, non-specific statements in an affidavit or verified complaint" are also insufficient. *McLanahan v. Young*, 4:13-CV-04140-RAL, 2016 WL 520983, at *6 (D. S.D. Feb. 5, 2016) (citing *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## III. ANALYSIS

Defendant McGee argues that Summary Judgment on the issue of exhaustion should be granted in his favor on reconsideration because: (1) the ADC grievance process was available to Plaintiff, and (2) Plaintiff prevented ADC officials from investigating his claim against Defendant McGee and therefore willingly chose not to exhaust his administrative remedies. (ECF No. 43).

The Court will readdress the argument that a PREA Report may not be used as a substitute for the ADC grievance procedure before addressing Defendant McGee's arguments in the current brief.

### A. A PREA Report Cannot Substitute for the ADC Grievance Procedure

Plaintiff argues that filing a PREA report satisfies his PLRA administrative exhaustion requirement. Plaintiff did not provide any documentation of a PREA Report or investigation.[3] Instead, he provided a copy of an Incident Report dated July 18, 2016, which indicates Defendant McGee noticed a bruise on Plaintiff's hip and lacerations on two toes on his right foot during a shower call. Plaintiff reported that he had fallen while in his cell. Plaintiff was taken to the infirmary and treated. His urinalysis tested positive for PCP, and the form indicated it was not a suspected PREA incident. (ECF No. 20-4 at 1-2).

Defendant McGee has now, for his second motion on exhaustion, provided a copy of Plaintiff's PREA Report regarding the alleged sexual assault on July 18, 2016. The PREA Report was submitted on August 2, 2016. (ECF No. 30-3 at 15-17; ECF No. 42-4). In it, Plaintiff states:

> I was in East Isolation in the cell #28 as well as I can rember I was told to back up & cuff up for a shower. I did so & when we (2 C/O) got to the shower area it was full the C/O's backed me up to the day room area & was tossed on to the mat that was on the floor face dn & told to stay there until some one came for me. In the best of memory I was kicked in the side many time & I was then raped by (1) black male, name unknown, but he was my niehbor in Foxtrot as you face my cell in Foxtrot he was in the first bed closest to me. Later that nite I was beaten badly & the Spanish C/O from Foxtrot name Artago Isabello? he was kicking me I was not cuffed but he and several others were there and he was jamming a mop handle in my rectum. There is more but no space. The incident was 7-18-16 I have a longer statement already written.

(ECF No. 42-4) (errors in original). Plaintiff's allegations continue for two more pages, describing what should be available to be seen on cameras. The Court notes that Defendants McGee and inmate Greenway are not identified in this PREA Report. A memorandum submitted to Warden Faust by Captain Branch on August 5, 2016, reflects that Plaintiff stated inmate Artago beat him and a black

---

[3] Plaintiff alleges he did not receive requested discovery. (ECF No. 20 at 11). He did not, however, file a motion to compel discovery with the Court.

man raped, kicked, and bruised him. (ECF No. 30-3). The same memorandum indicates that camera footage was reviewed and "showed no merits to Inmate Woodard's allegation." (*Id*.).

Defendant McGee also provided excerpts of Plaintiff's deposition testimony concerning his PREA Report. (ECF No. 42-1). In his deposition, Plaintiff first testified that he identified Defendant McGee's part in his alleged assault "through PREA." (*Id*. at 5). Plaintiff then testified that he "refused to mention anybody" when the chaplain and other officers asked him for a witness statement on July 27, 2016 and August 2, 2016. (*Id*. at 8). Chaplain Jerry Wilson submitted a report stating he spoke with Plaintiff concerning his PREA report on August 5, 2016. Chaplain Wilson states that Plaintiff did not wish to discuss the event despite being asked repeatedly to do so. (ECF No. 30-3).

The Prison Litigation Reform Act ("PLRA") mandates exhaustion of available administrative remedies before an inmate files suit. Section 1997e(a) of the PLRA provides: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S. C. § 1997e(a).

In *Jones v. Bock*, 549 U.S. 199 (2007), the Supreme Court concluded that "exhaustion [as required by the PLRA] is not *per se* inadequate simply because an individual later sued was not named in the grievances." *Id.* at 219. "[T]o properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules." *Id.* at 218 (internal quotation marks and citation omitted). The Court stated that the "level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.*

The Eighth Circuit Court of Appeals has recognized only two exceptions to the PLRA exhaustion requirement: (1) when officials have prevented prisoners from utilizing the grievance

7

procedures, or (2) when the officials themselves fail to comply with the grievance procedures. *See Gibson v. Weber,* 431 F.3d 339, 341 (8th Cir. 2005) (explaining a prisoner is only required to exhaust those administrative remedies that are "available" and any remedies that prison officials prevent a prisoner from utilizing are not considered available).

Whether a PREA Report may be used in place of a prison grievance procedure to exhaust the PLRA administrative exhaustion requirement is a question of first impression in the Eighth Circuit. The Ninth Circuit and the federal district courts which have addressed this question, including this District, have uniformly held that a PREA Report does *not* replace a prison grievance procedure for the purposes of satisfying the PLRA exhaustion requirement. *See e.g. Porter v. Howard*, F. App'x 792, 793 (9th Cir. 2013) (does not excuse inmate from requirement of filing and exhausting an administrative grievance to satisfy PLRA); *Bledsoe v. McDowel,* No. 4:16-cv-4057, 2017 WL 1091332, at *3-4 (W.D. Ark. Mar. 21, 2017) (Plaintiff's PREA complaint cannot substitute in place of a properly filed grievance as outlined in the ACC's grievance procedure); *Barringer v. Stanley*, No. 5:16-CV-17-FDW, 2017 WL 1028595, at *3 (W.D.N.C. Mar. 16, 2017) (PREA complaints are not prison grievances for purposes of satisfying the administrative remedies requirement under the PLRA); *Omaro v. Annucci,* 68 F.Supp.3d 359, 364 (W.D.N.Y. 2014) ("Nothing in the text or legislative history of the PREA suggests that it was intended to abrogate the PLRA's exhaustion requirement."); *Lamb v. Franke*, No. 2:12-CV-00367-MO, 2013 WL 638836, at *2 (D. Or. Feb. 14, 2013) ("The PREA does not impose an alternative remedial scheme, nor does it supersede PLRA's exhaustion requirement.").[4]

---

[4] *Accord Parry v. Muller*, No. 18-cv-1394-JPG, 2018 WL 4027572 (S.D. Ill. Aug. 23, 2018); *Howard v. Rodgers*, No. 17-3019-DDC-TJJ, 2018 WL 3122175 (D. Kan. June 26, 2018); *Doe 8 v. Snyder*, No. 17-11181, 2018 WL 1035715 (E.D. Mich. Feb. 23, 2018); *Oien v. Oregon*, No. 2:17-CV-00978-HZ, 2018 WL 503259 (D. Or. Jan. 22, 2018); *Kelsic v. Terrel*, No. 14CV3342SLTLB, 2017 WL 2560923 (E.D. N.Y. June 13, 2017); *Farmer v. Otter*, No. 1:14-cv-00345-BLW, 2015 WL 5595497 (D. Idaho, Sept. 22, 2015); *Turnquist v. Raney*, No. CV 13-87-BLG-CSO, 2015 WL 4528572 (D. Mont. July 27, 2015); *Rivera v. Drake*, No. 09-C-1182, 2014 WL 12526621 (E.D. Wisc. Feb. 11, 2014); and, *Porter v. Howard*, No. 10CV1817 JLS (PCL), 2012 WL 2836637 (S.D. Cal. July 10, 2012).

There appear to be only two instances where district courts have permitted a PREA Report to be used to meet the PLRA exhaustion requirement, both of which are dependent on the language of the prison grievance policy in question. The first occurs when the prison grievance policy contains explicit language deeming a PREA Report to be sufficient to meet the PLRA exhaustion requirement. In this instance, completion of the prison grievance procedure is not required for PLRA exhaustion. *See e.g. Medina v. Kaplan*, No. 16-CV-7223 (KMK), 2018 WL 797330, at *5 (S.D.N.Y. Feb. 8, 2018) (pursuant to the correction facility's regulations, "any allegation concerning an incident of sexual abuse or sexual harassment shall be deemed exhausted if official documentation confirms that the inmate reported the incident to facility staff") (internal quotations and alterations omitted). The second occurs when the grievance policy in question explicitly prohibits an inmate from using the grievance process to report PREA complaints. In this circumstance, the grievance process is considered unavailable. *See Pearson v. CoreCivic*, 3:17-0485, 2018 WL 3354919, at *6 (M.D. Tenn. May 2, 2018), *report and recommendation adopted sub nom. Pearson v. CoreCivic, Inc.*, No. 3:17-CV-00485, 2018 WL 3348732 (M.D. Tenn. July 9, 2018) (the policy at the facility stated "alleged PREA incidents will not be processed through the facility's inmate/resident grievance process.").

Neither of these two circumstances are applicable to the present case as the explicit language in AD 14-16 expressly encompasses sexual assault within the ADC grievance procedure. AD 14-16 describes a three-step process where the inmate first files an informal written complaint as Step One on a Unit Level Grievance Form. Step Two requires the submission of a formal written complaint, using the same form used for Step One. Step Three requires the inmate to submit a written appeal to the Chief Deputy, Deputy, or Assistant Director. (ECF No. 15-1 at 1-2). An inmate grieving a sexual assault may bypass Step One:

> "Inmates alleging sexual assault, physical abuse, or sexual misconduct/harassment by staff is [sic] not required to complete step one, but should file a formal grievance (step two) directly to the warden." (*Id*. at 2).

Sexual assault, physical abuse, and sexual misconduct are considered emergency grievances. (*Id*. at 2, 6). A section labelled "Prison Litigation Reform Act Notice" advises inmates of the consequences of failing to complete the grievance process:

> "Inmates are hereby advised that they must exhaust their administrative remedies as to all defendants at all levels of the grievance procedure before filing a Section 1983 lawsuit and Claims Commission claim. If this is not done, their lawsuits or claims may be dismissed immediately." (*Id*. at 17).

There are no references to the PREA or the ADC PREA policy in AD 14-16.

Thus, based on the plain language of AD 14-16, Plaintiff's PREA Report is not sufficient to satisfy his PLRA administrative exhaustion requirement. Plaintiff's incorrect belief that the PREA Report could be used in place of the ADC grievance process does not excuse his failure to exhaust his administrative remedies. *See Lyon v. Vande Krole*, 305 F.3d 806, 809 (8th Cir. 2002*)* (a court is not permitted "to consider an inmate's merely subjective beliefs, logical or otherwise, in determining whether administrative procedures are 'available.'").

Plaintiff therefore failed to exhaust his administrative remedies for the incident he alleges occurred from July 18, 2016 to July 19, 2016.

### B. Plaintiff's PREA Report Bears No Relation to the Scenario Described in his Complaint for this Case

Even assuming, *arguendo*, that Plaintiff's PREA Report could be used in place of an ADC grievance form to satisfy the PLRA exhaustion requirement, Plaintiff's PREA Report in this case cannot suffice because the allegations in his PREA Report describe completely different facts than the allegations in his Complaint.

Aside from his allegation that a sexual assault occurred on July 18, 2016, the allegations in his Complaint for this case bear no relation to the facts alleged in his PREA Report. In his Complaint, Plaintiff alleges Defendant McGee opened his cell door to let Inmate Greenway and several other inmates into his cell to rape and beat him as a group in a single incident. He alleges that McGee and

10

Greenway urged on the other inmates and gave them instructions. Further, he alleges Defendant McGee recorded the assault with his smartphone.

In contrast, Plaintiff's PREA report states he was first raped by one black inmate in the day room. He further alleges he was then raped that night by a Spanish corrections officer named Artago Isabello while several others were present. Plaintiff does not allege that anyone other than Isabello raped him that night. Notably, any mention of Defendants McGee, Greenway, and the gang of assaultive Doe inmates are missing from his PREA Report.

Plaintiff therefore failed to exhaust his administrative remedies against Defendants McGee and Greenway for the incident he alleges occurred from July 18, 2016 to July 19, 2016.

### C. The ADC Grievance Process was Available to Plaintiff While He Was Housed in East Isolation

In his Response to the Summary Judgment Motion, Plaintiff asserted that it is an inmate's "choice" to use either the PREA process or the ADC grievance process to report a sexual assault. (ECF No. 21 at 2-3). Plaintiff chose to file a PREA Report. Plaintiff also alleged - for the first time in this case - that "[a]ll correctional officers refused access to all forms of official type paper forms for making request or filing complaints & or grievances." (ECF No. 20 at 5). In his Objection to the Report and Recommendation, he alleged:

> "upon at least 6 different occasions to at least 6 different ADC employees did request Unit Level Grievance forms and at no time while I was in East Isolation did I receive any grievance forms, or any Inmate Request forms to file a complaint related to failure to receive Unit Level Grievance forms." (ECF No. 29-2 at 1-2).

He reiterated that "[a]ll ADC staff members refused or failed to provide this Plaintiff with any and all official forms for making request, filing complaints, or grievances." (ECF No. 29-2 at 1). Plaintiff alleges he was not able to access any grievance forms until he was released from East Isolation, which occurred "a minimum of 30 day[s] after the attack." (ECF No. 29 at 6).

Defendant McGee provided Plaintiff's deposition testimony concerning the availability of grievance forms. Plaintiff testified that while he was in isolation, he asked "several ADC staff" for grievances or "any kind of paperwork just to file something" but never got paperwork. (ECF No. 42-1 at 3). He did not know any of the names of the staff he asked, except for Musselwhite who was assistant Warden at the time. (*Id*.). Plaintiff stated that Musselwhite would come through and tell you "he'd get you something and he never would." (*Id*.). "Nobody ever showed up with the grievance or request forms." (*Id*.).

Defendant McGee argues Plaintiff's allegations that he was denied access to all forms and paperwork while in East Isolation is "patently false" because Plaintiff submitted an Inmate Request Form directly to the ADC Director Wendy Kelley while he was in East Isolation. (ECF No. 43 at 6). Defendant McGee attached a copy of this form, dated August 1, 2016, and it identifies Plaintiff as being housed in East Isolation ("E ISO"). (ECF No. 42-3). In it, Plaintiff asks Director Kelley why he was reduced to Class Four, placed in isolation for 30 days, laughed at, and accused of lying because he was raped. He asks how this situation fits with the ADC Mission Statement.[5] (*Id*.). Defendant McGee notes that Plaintiff's Inmate Request Form was filed 13 days after the alleged attack, which was well within the 15-day ADC deadline for filing a Unit Level Grievance Form.[6] He also notes the Inmate Request Form does not mention him by name or title, does not request a grievance form, does not state that he is being denied a grievance form, and does not request an interview with ADC staff. (ECF No. 43 at 6-7).

Defendant McGee provided an affidavit from Grievance Officer Vickie Orr. (ECF No. 30-2). She states that grievance forms are available to inmates housed in East Isolation. (*Id*. at 4). There

---

[5] The record indicates Plaintiff was placed in restrictive housing because he tested positive for PCP after he jumped off the toilet in his cell and injured himself. (ECF No. 30-3 at 18). PCP (phencyclidine) is a hallucinogen. https://medlineplus.gov/ency/patientinstructions/000797.htm. (last accessed Aug. 19, 2019).
[6] A Unit Level Grievance Form must be filed within 15 days of an incident to be considered timely. (ECF No. 15-1 at 5).

12

were multiple ADC staff for each shift in East Isolation who were not named as defendants in this case and who could have helped Plaintiff with the grievance procedure. (*Id*. at 4). Plaintiff was housed in East Isolation from July 18 to August 15, 2016. (*Id*.). During the 15-day period from July 18 to August 5, 2016, her office received 56 grievances from other inmates housed in East Isolation. (*Id*. at 5). She further states that Plaintiff did not file any grievances concerning the incident after he was released from East Isolation. (*Id*.).

Defendant McGee also provided an affidavit from Gary Musselwhite, who was the Deputy Warden at Plaintiff's Unit in 2016, and the only individual that Plaintiff was able to identify as having denied him a grievance form while he was in East Isolation. (ECF No. 42-2). Musselwhite states that the Inmate Request Forms are often used to request paperwork or forms, contact information for individuals inside or outside the Unit, interviews with staff, or other similar items. (*Id*. at 2). If Plaintiff was being denied a Unit Level Grievance form, he could have submitted an Inmate Request Form requesting one to Musselwhite, a deputy warden, or the Unit's grievance officer and one would have been provided to him. Musselwhite states he has no recollection of Plaintiff asking him for a grievance form, and he would have instructed staff to provide him with a grievance form if he had asked. (*Id*. at 1). He further states that Plaintiff could also have used an Inmate Request form to request an interview with him to discuss the denial of a grievance form by ADC staff or the underlying issue of his PREA Report. He would have provided Plaintiff with a grievance form at the interview. Musselwhite does not recall receiving an Inmate Request Form from Plaintiff requesting either a grievance form or an interview to discuss his PREA Report or any other issues with the grievance system. (*Id*. at 2).

There is no dispute that Plaintiff did not file any grievances concerning the incident he alleges occurred on July 18, 2016. The question is whether he chose not to do so or whether he was prevented from doing so. Based on the record before the Court, Plaintiff chose not to avail himself of the many

13

opportunities he had to utilize the ADC grievance process, either in East Isolation or in General Population.

First, the record now shows that Plaintiff submitted an Inmate Request Form directly to ADC Director Wendy Kelley on August 1, 2016. He submitted it while he was housed in East Isolation, less than 15 days after the occurrence of the alleged incident. The existence of this Inmate Request Form directly contradicts Plaintiff's allegations that he was denied access to all forms and paperwork, including Unit Level Grievance Forms and Inmate Request Forms, while he was in East Isolation.

Plaintiff could have used this Request Form to ask for a Unit Level Grievance Form. He did not. Plaintiff could have used this Request Form to note that he was being denied a Unit Level Grievance Form. He did not. He could have used this Request Form to ask for an interview with Musselwhite or other ADC staff to discuss either the incident or the alleged denial of a Unit Level Grievance Form. He did not. Instead he used this opportunity to communicate with the ADC Director to complain about his Inmate Class demotion and placement in East Isolation in violation of the ADC's Mission Statement.

Second, Plaintiff filed his PREA Report on August 2, 2016. (ECF No. 42-4 at 15). This Report was also filed while Plaintiff was housed in East Isolation, and less than 15 days after the alleged incident. The existence of his PREA Report directly contradicts Plaintiff's allegations that he was denied access to all forms and paperwork while he was in East Isolation.

Third, Plaintiff testified in his deposition that he spoke with two staff investigators and a chaplain about the alleged incident on July 26 and 27, 2016, and again on August 2, 2016. (ECF No. 42-1 at 8). Plaintiff could have asked for a Unit Level Grievance Form during any of these interviews. He did not. Instead, he testified that he refused to cooperate in the PREA process and provide a witness statement, i.e., he "refused to mention anybody." (*Id*.). Plaintiff ultimately did provide his

PREA Report on August 2, 2016, which, as discussed above, bears no relation to the factual scenario alleged in this lawsuit.

Fourth, in his Objection to the Report and Recommendation, Plaintiff admits he had access to Unit Level Grievance Forms when he was released from East Isolation on August 15, 2016. At that time, Plaintiff could have filed a grievance concerning the alleged incident on July 18, 2016, using the denial of a grievance form as justification for filing past the 15-day deadline. He did not.[7] Plaintiff could have also filed a grievance concerning the alleged denial of grievance forms while he was housed in East Isolation. He did not.

Thus, Plaintiff's allegations that he was prevented from using the ADC grievance process because he was denied access to all forms and paperwork are now contradicted by other evidence in the record to such an extent that no reasonable juror could believe them. *See McLanahan*, 2016 WL 520983, at *6 (conclusory, non-specific statements in an affidavit or verified complaint are insufficient to survive summary judgment). Further, the forms and paperwork that he filed while he was in East Isolation cannot suffice to exhaust his remedies against Defendants McGee or Greenway because they fail to name either and describe a factual scenario completely different than the allegations contained in his Complaint.

### D. Plaintiff Prevented ADC Officials from Investigating his Claim Against Defendant McGee and Plaintiff Willingly Chose Not to Exhaust his Administrative Remedies

Defendant McGee argues Plaintiff actively prevented ADC officials from investigating his claim against Defendant McGee, thereby thwarting the underlying policy rationale for PLRA exhaustion. Specifically, by refusing tell the ADC officials investigating his PREA Report that Defendant McGee had any connection to the alleged assault, he prevented ADC officials from investigating his complaints against him prior to filing this lawsuit. Plaintiff therefore "precluded

---

[7] Nor does he allege that he attempted to do so and had his grievance denied for being untimely.

ADC officials from investigating Defendant McGee's conduct, resolv[ing] any issues internally, and preserv[ing] a proper administrative record for litigation." Defendant McGee also argues that Plaintiff' PREA Report is "instructive because it shows what he would have grieved if he had filed a grievance form." (ECF No. 43 at 9-10).

Plaintiff testified that he refused to identify anyone when he talked to a chaplain and other officers concerning the alleged incident. The PLRA exhaustion requirement gives prisoners an incentive to use the grievance process, gives prisons a fair opportunity to correct their own errors, reduces the quantity of federal prison suits, improves the quality of those suits that do go to federal court, and improves the quality of the record. *Woodford v. Ngo*, 548 U.S. 81, 94 (2006). All these policy rationales are directed at encouraging inmates to be diligent and prompt in their filing, and for prisons to be prompt and accurate in their responses to grievances. When a prisoner refuses to participate in the process, he not only fails to exhaust his remedies but thwarts the underlying policies behind the PLRA exhaustion requirement to his detriment.

Finally, as previously discussed in this Report and Recommendation, Plaintiff's PREA Report describes a completely different factual scenario than the one Plaintiff described in his Complaint in this case. The PREA Report does not identify Defendant McGee or Defendant Greenway, and instead, identifies an unnamed black inmate and a Hispanic correctional officer named Artago Isabello. Further, Plaintiff's Inmate Request Form, submitted one day prior to his PREA Report, also fails to name either Defendant McGee or Defendant Greenway in relation to the alleged assault. Thus, even if Plaintiff had filed a grievance using the facts contained in his PREA Report and in his Inmate Request Form, those facts would not suffice to exhaust his administrative remedies against Defendants McGee or Greenway for this case.

## IV.  CONCLUSION

Accordingly, it is recommended that Defendant McGee's Motion for Reconsideration (ECF No. 42) be **GRANTED** and Plaintiff's Complaint be **DISMISSED WITH PREJUDICE** against all remaining Defendants.  It is further recommended that Plaintiff's pending Motions (ECF No. 47, 48, 49) be **DENIED**.

**The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED** this **18th day of September 2019**.

/s/ *Mark E. Ford*
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE